# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **S.W. AND J.W. Individually and as Guardian ad litem of W.W.,** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No. 15-7842 (MAH)** |
| | : | |
| **v.** | : | |
| | : | |
| **FLORHAM PARK BOARD OF EDUCATION,** | : | **OPINION** |
| | : | |
| **Defendant.** | : | |

## I.  INTRODUCTION

This matter comes before the Court on cross-motions for summary judgment filed by Plaintiffs, S.W. and J.W., and Defendant, Florham Park Board of Education [D.E. 20-21].[1]  The Court held oral argument on the motions on May 22, 2017.  For the reasons set forth below, the Court will grant Plaintiffs' motion for summary judgment and deny Defendant's motion for summary judgment.  The Court will remand this matter to the New Jersey Office of Special Education Programs for a new due process hearing.

## II.  BACKGROUND

This matter involves a dispute under the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* between Defendant Florham Park Board of Education ("Defendant" or "the Board") and Plaintiffs S.W. and J.W. ("Plaintiffs" or "the parents"), who are the parents of

---

[1] On August 1, 2016, the parties consented to the Undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.

their minor child W.W.  The parents challenge the Board's proposed Individualized Education Plan ("IEP") for the 2014-2015 school year (W.W.'s seventh grade year), alleging that the proposed IEP denied W.W. a free appropriate public education ("FAPE").

## A. Factual History

During the time of the events in Plaintiffs' Complaint, W.W. was a thirteen-year-old student in the Florham Park School District who was eligible for special education and related services, under the category of Communication Impaired.  Compl. ¶ 5, D.E. 1; Plaintiffs' L. Civ. R. 56.1 Statement of Facts ("Pls.' Statement of Facts"), ¶ 1, D.E. 27; Defendant's Counter Statement of Material Facts ("Def.'s Counter Statement"), ¶ 1, D.E. 29-1.  Defendant is a local education authority as defined by the IDEA.  Pls.' Statement of Facts, ¶ 2, D.E. 27; Def.'s Counter Statement, ¶ 2, D.E. 29-1.

Near the end of the 2013-2014 school year, as W.W. was completing sixth grade, a dispute arose between the parties over W.W.'s IEP for seventh grade.  On July 22, 2014, Plaintiffs filed a due process petition with the New Jersey Department of Education's Office of Special Education Programs against the Florham Park Board of Education, which was transmitted to the Office of Administrative Law, State of New Jersey on August 21, 2014.[2] Plaintiffs' Statement of Facts, ¶ 3, D.E. 27; Def.'s Counter Statement, ¶ 3, D.E. 29-1.  Plaintiffs contended that the IEP proposed by Defendant failed to provide W.W. with a FAPE.

---

[2]  Under the IDEA and New Jersey regulations, disputes between parents of a disabled child and the school, over the adequacy of the proposed IEP, are to be resolved through due process hearings before an Administrative Law Judge of the New Jersey Office of Administrative Law. *See* 20 U.S.C. § 1415(a); N.J.A.C. § 6A:14-2.7.

Additionally, Plaintiffs unilaterally placed W.W. at the Winston Preparatory School ("Winston"), a private school, and sought reimbursement from the Board.   Compl. ¶ 6.

### B.  Administrative Proceedings

After Plaintiffs filed the due process petition, an Administrative Law Judge held hearings in the matter on May 5, 2015, May 18, 2015 and July 15, 2015.  The Administrative Law Judge limited each party to three witnesses.  *Id.* ¶ 4.

At the conclusion of Defendant's case, but before Plaintiffs presented their own case, Plaintiffs moved for summary judgment, arguing that Defendant had failed to meet its burden of proof.  *Id.* at ¶ 5.  The Administrative Law Judge directed the parties to file briefs.  Defendant opposed Plaintiffs' motion and cross-moved for summary judgment.  Defendant's Motion for Summary Judgment, Oct. 14, 2016, D.E. 21, at 2.  On May 27, 2015, Plaintiffs submitted their brief in support of their motion for summary judgment to the Administrative Law Judge.  Pls.' Statement of Facts*, ¶ 5.*  The parties agreed to continue with the hearing pending resolution of the summary judgment motions.  Compl. ¶ 11.   Plaintiff had the opportunity to present only one witness, Scott Bezsylko, who was the Executive Director of Winston.  *Id.*  Before Plaintiffs had the opportunity to present any other witnesses, the Administrative Law Judge issued a final decision in which she determined that the Board did not deny W.W. a FAPE.  Defendant's Motion for Summary Judgment, Exhibit A to Certification of Counsel, D.E. 21-3.

In addition to the joint exhibits and the Board's exhibits, the Administrative Law Judge considered the testimony of three witnesses offered by the Board:  (1) Lauren Lee Erickson ("Erickson"), a certified school psychologist; (2) David Burrows ("Burrows"), a speech and language specialist; and (3) Lori-Jane Dolan ("Dolan"), a learning disability teacher consultant.

Def.'s Motion for Summary Judgment, Exhibit A to Certification of Counsel, D.E. 21-3, at 2, 17, 25. All three witnesses were Florham Park School District employees. *Id.* After hearing testimony, the Administrative Law Judge agreed with Defendant's witnesses that the proposed IEP conferred on W.W. a meaningful educational benefit such that Defendant met its burden of providing W.W. with a FAPE. *Id.* at 49.

The Administrative Law Judge first considered the testimony offered by Erickson. Erickson had been W.W.'s case manager, and testified as to W.W.'s progress and educational plan. *Id.* at 2. Erickson testified that she monitored W.W.'s progress periodically via consultations with teachers, classroom observations and review of report cards when necessary. *Id.* Here, the Administrative Law Judge was persuaded by Erickson's testimony that "based on W.W.'s Special Education Reports, his DRA scores, and his i-Ready scores, …W.W. was making meaningful progress in his program [in both his fifth and sixth grade years]," and that the IEPs established for him were appropriate for him. *Id.* at 6, 32-32. The Administrative Law Judge also determined, based on Erickson's testimony, that both the 2012-2013 and 2013-2014 IEP indicated modifications to address W.W.'s memory and processing speed deficits. *Id.* at 33.

The Administrative Law Judge then considered the testimony of Burrows, who was responsible for testing and treating students with speech and language disorders. *Id.* at 17. During W.W.'s fifth-grade year and at the beginning of his sixth-grade year, Burrows worked with W.W. *Id.* The Administrative Law Judge pointed to the testimony of Burrows in finding that W.W. had made articulation progress during his fifth-grade year, and noted that his parents declined to discontinue Burrows's services near the beginning of W.W.'s sixth-grade year. *Id.* at 33-24. Moreover, Burrows testified that he participated in the formulation of the 2014-2015 IEP,

specifically by drafting the language goals. Burrows testified that when all language deficiencies could not be remedied at once, the most serious deficits were prioritized. *Id.* at 34. The Administrative Law Judge considered the report of plaintiff's expert, Dr. Couvadelli. But relying on Burrows's testimony, the Administrative Law Judge concluded that "the District can provide the necessary speech and language services to enable W.W. to access the curriculum, and receive a meaningful benefit." *Id.*

Finally, the Administrative Law Judge considered the testimony of Dolan, W.W.'s case manager for the 2014-2015 year. *Id.* In drafting the 2014-2015 IEP, Dolan reviewed W.W.'s prior IEPs, met with prior case managers, and consulted his entire file, including report cards, tests and assessments. *Id.* W.W.'s proposed 2014-2015 IEP would have placed him in resource rooms for math and language arts, but in a supportive instructional assistance classroom for social studies and science. *Id.* at 35. Dolan testified, and the Administrative Law Judge apparently accepted, that W.W.'s placement in the supportive instructional assistance classroom would have permitted W.W. to interact with his typically-developing peers, while learning the general education curriculum with support. *Id.* The Administrative Law Judge concluded that placement in resource rooms for math and language arts would have provided W.W. much needed "individualized assistance." *Id.* Thus, the Administrative Law Judge concluded that "W.W.'s 2014-15 IEP was reasonably calculated to provide W.W. a meaningful educational benefit." *Id.*

Upon consideration of these three witnesses and the exhibits admitted, the Administrative Law Judge concluded that W.W. received a FAPE because his IEP for the 2014-2015 school

year and educational setting were appropriate and provided him a meaningful educational

benefit. *Id.* at 45. In her opinion, she stated:

> [T]he District's witnesses amply established that W.W.'s placement in a supportive
> instructional assistance classroom for social studies and science was appropriate, because
> such placement was reasonably calculated to confer a meaningful educational benefit. I
> FIND that a supportive instructional assistance classroom provided an opportunity for
> W.W. to access the general education curriculum, with supports, in subjects that do not
> require strong reading and writing skills. The supportive instructional assistance
> classroom provided W.W. with an opportunity to interact with his typically developing
> peers, which provided linguistic role models, to further address his communication
> impairment.

*Id.*

The Administrative Law Judge also found that the District, through its witnesses,

provided ample assessments from which the District could conclude that W.W. was progressing.

*Id.* For example, she determined that "the District's witnesses testified that they used a variety of

measures to determine the most appropriate placement for W.W., including classroom

observations, classroom assessments, i-Ready tests, previous assessments, and close, objective

monitoring of W.W.'s progress in speech therapy." *Id.* at 48. Finally, she determined that "the

District witnesses testified that W.W. was able to access the general education curriculum, with

supports, which was reflected in W.W.'s grades." *Id.* Accordingly, the Administrative Law

Judge concluded that the District, through credible witness testimony, had met its burden by a

preponderance of the evidence "that the District offered W.W. a FAPE, which was reasonably

calculated to confer a meaningful educational benefit." *Id.* at 49.

It bears noting that the Administrative Law Judge declined to consider the testimony of

Plaintiffs' witness, Bezsylko. Defendant's Motion for Summary Judgment, Exhibit A to

Certification of Counsel, D.E. 21-3, at 2, n. 1.

### C. Procedural History

On November 2, 2015, Plaintiffs filed the instant Complaint, alleging the following two counts: (1) "the Administrative Law Judge erred in issuing a final decision when only an interlocutory decision was appropriate. Plaintiffs were denied their due process rights to present their case;" and (2) "Defendant failed to meet its burden of proving W.W. was offered a FAPE and therefore the Administrative Law Judge's decision should be reversed." Compl. ¶¶ 15-17; 24.

Defendant moved to dismiss Plaintiffs' Complaint and for a more definite statement on December 15, 2015. The District Court denied the motion by Letter Order on July 20, 2016. Letter Order, July 20, 2016, D.E. 14. In denying Defendant's motion, the Court concluded that Plaintiffs had adequately pleaded claims for relief by alleging that: (1) Plaintiffs were denied due process because they were unable to call witnesses and present evidence at the due process hearing, in violation of 20 U.S.C. § 1415(h)(2); and (2) the Administrative Law Judge's findings were arbitrary and capricious, and contrary to the evidence. *Id.* at 3.

Defendant filed its Answer to the Complaint on August 3, 2016. Answer, Aug. 3, 2016, D.E. 19. On August 1, 2016, the parties consented to Jurisdiction by the Undersigned. Consent to Jurisdiction by U.S. Magistrate Judge, Aug. 1, 2016, D.E. 18. On October 14, the parties cross-moved for summary judgment. Pls.' Motion for Summary Judgment, Oct. 14, 2016, D.E. 20, Def.'s Motion for Summary Judgment, Oct. 14, 2016, D.E. 21.

### III. DISCUSSION

#### A. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(3)(A).  As the District Court noted in denying Defendant's motion to dismiss, "[t]he ALJ's decision was a final decision, and Plaintiffs had the right to appeal that decision to this Court pursuant to 20 U.S.C. § 1415(i)(2)."  Letter Order, July 20, 2016, D.E. 14, at 2 n.1.

#### B. IDEA

The primary purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education [FAPE] that emphasizes special education and related services designed to meet their unique needs."  20 U.S.C. § 1400(d)(1).  The United States Supreme Court has interpreted the FAPE provision to mean that schools in states that receive federal funding must provide "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction."  *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 203 (1982).  The United States Court of Appeals for the Third Circuit has further interpreted this provision to require the educational program to provide special education students with meaningful educational benefits.  *Polk v. Cent. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 184 (3d Cir. 1988).

The IDEA provides funding to states to help meet their educational needs.  *Honig v. Doe*, 484 U.S. 305, 310 (1988).  To qualify for financial assistance, states must comply "with the IDEA's extensive substantive and procedural requirements."  *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992).  "By providing a host of procedural safeguards, Congress intended to promote [the Act's] purpose" of providing a FAPE.  *Engwiller v. Pine Plains Cent.*

8

*Sch. Dist.*, 110 F. Supp. 2d 236, 247 (S.D.N.Y. 2000). The IDEA's procedural safeguards are also meant to ensure attainment of its substantive goals. *Rowley*, 458 U.S. at 205-206.

One substantive requirement of the IDEA is to educate special education students in the least restrictive environment. *Murray v. Montrose Cnty. Sch. Dist. RE-IJ*, 51 F.3d 921, 926 (10th Cir. 1995) (quotations omitted). States must establish "procedures to ensure that . . . [t]o the maximum extent appropriate, children with disabilities . . . are educated with children who are not disabled . . . ." 20 U.S.C. § 1412(a). Children with disabilities may be removed from the "regular educational environment . . . only when the nature and severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." *Id.*; *see Oberti v. Bd. of Educ. of Borough of Clementon Sch. Dist.*, 995 F.2d 1204, 1213-14 (3d Cir. 1993). The New Jersey State regulations include a similar directive to educate classified children alongside their non-disabled peers in the least restrictive environment. *See* N.J. Admin. Code § 6A:14-4.2.

School districts implement a FAPE by designing an IEP for each special education student. 20 U.S.C. § 1414(d). The Third Circuit has described the IEP as "the 'centerpiece' of the IDEA's system for delivering education to disabled children." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 557 (3d Cir. 2010) (quoting *Polk*, 853 F.2d at 173). State educational authorities are required to "identify and evaluate disabled children, § 1414(a)-(c), develop an IEP for each one, § 1414(d)(2), and review every IEP at least once a year, § 1414(d)(4)." *Schaffer v. Weast*, 546 U.S. 49, 53 (2005). The IEP must be "reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential." *D.S.*, 602 F.3d at 557 (quotations and citations omitted).

Parents play a critical role in formulating the IEP along with the other members of the IEP team. 20 U.S.C. § 1414(d)(1)(B); *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 524 (2007). Parents are entitled to participate in the IEP meetings and must be given notice by the school of any changes to their child's intended educational program. 20 U.S.C. § 1415(b). The "process culminates in the formulation of an [IEP], tailored to the child's unique needs." *Hoeft*, 967 F.2d at 1300. The IDEA enables parents "to act as advocates for their children at every stage of the administrative process." *Maroni v. Pemi-Baker Reg'l Sch. Dist.*, 346 F.3d 247, 256 (1st Cir. 2003).

The IDEA's procedural safeguards also include the right to present a complaint regarding a child's educational plan in a due process hearing. 20 U.S.C. § 1415(b)(6), (f), (k). Under New Jersey law, the school district bears the burden of demonstrating that the district has offered the student a FAPE. N.J.S.A. 18A:46-1.1; *see also Carlisle Area School v. Scott P. By and Through Bess P.,* 62 F.3d 520, 533 (3d Cir. 1995) ("In administrative and judicial proceedings, the school district bears the burden of proving the appropriateness of the IEP it has proposed.") (citing *Oberti*, 995 F.2d at 1219; *Fuhrmann v. East Hanover Bd. of Educ.*, 993 F.2d 1031, 1035 (3d Cir. 1993)). Any party dissatisfied with the outcome of the due process hearing may bring a civil action in any state or federal district court. *Id.* § 1415(i)(2)(A). "However, it is clear from the language of the Act that Congress intended plaintiffs to complete the administrative process before resorting to federal court." *Komninos by Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994). Requiring exhaustion of the administrative process before allowing claims to be brought in federal district court "encourages parents and the local school district to work together to formulate an individualized plan for a child's education, and allows

the education agencies to apply their expertise and correct their own mistakes." *Woodruff v. Hamilton Twp. Pub. Sch.*, 305 F. App'x. 833, 837 (3d Cir. 2009).

### C. Standard of Review

Pursuant to Rule 56(c), a motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it might affect the outcome of the case, and an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007). All facts and inferences must be construed "in the light most favorable to the nonmoving party." *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994). Where the non-moving party bears the burden of proof on an issue, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

The party seeking summary judgment must initially provide the Court with the basis for its motion. *Celotex Corp.*, 477 U.S. at 323. This requires the moving party to either establish that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or demonstrate that the non-moving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id.* at 322-23. Once the party seeking

summary judgment has carried this initial burden, the burden shifts to the non-moving party. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).

To avoid summary judgment, where the non-moving party will bear the burden of proof at trial on a dispositive issue, he or she must demonstrate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The opposing party must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 587 (internal quotations and citation omitted). In addition, summary judgment may be granted if the nonmoving party's "evidence is merely colorable, or is not significantly probative." *Anderson*, 477 U.S. at 249-50 (citations omitted).

Under the IDEA, a court reviewing an administrative decision shall receive the administrative record, may consider additional evidence upon request, base its decisions upon the preponderance of the evidence, and grant appropriate relief. 20 U.S.C. § 1415(i)(2)(C); *M.A. v. Voorhees Twp. Bd. of Educ.*, 202 F. Supp.2d 345, 359 (D.N.J. 2002). The party "challenging the administrative decision bears the burden of persuasion before the district court as to each claim challenged." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 270 (3d Cir. 2012).

Therefore, a "District Court applies a modified version of *de novo* review and is required to give due weight to the factual findings of The Administrative Law Judge." *L.E. v. Ramsey Bd. of Edu.*, 435 F.3d 384, 389 (3d Cir. 2006); *S.H. v. State–Operated Sch. Dist. of Newark*, 336 F.3d 260, 271 (3d Cir. 2003) ("[F]actual findings from the administrative

proceedings are to be considered prima facie correct.").  "Due weight" is afforded to the

administrative proceedings to prevent the courts from imposing "their own notions of sound

education policy."  *See Susan N. v. Wilson Sch. Dist.,* 70 F.3d 751, 757 (3d Cir. 1995) (quoting

*Rowley*, 458 U.S. at 206).  In applying the "due weight" standard, the court must "consider—

although not necessarily accept—the administrative fact findings."  *Carlisle Area Sch. v. Scott

P.*, 62 F.3d 520, 529 (3d Cir. 1995).  If a court departs from the Administrative Law Judge's

findings, it must find factual support in the record and fully explain why it departed from the

Administrative Law Judge's decision.  *S.H.*, 336 F.3d at 271.  An Administrative Law Judge's

credibility determinations made after hearing live testimony are entitled to special weight,

"unless the non-testimonial, extrinsic evidence in the record would justify a contrary

conclusion."  *Shore Reg'I High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004)

(quotations omitted).  However, the Administrative Law Judge's legal determinations are

reviewed *de novo*.  *See*, *e.g.*, *P.N. v. Greco*, 282 F.Supp.2d 221, 235 (D.N.J. 2003).

### D.  The Parties' Arguments

Plaintiffs argue that the Administrative Law Judge's decision was arbitrary and

capricious because she did not permit them to present their witnesses and evidence, and because

she found that the Board had provided W.W. a FAPE.  Pls.' Motion for Summary Judgment, Oct.

14, 2016, D.E. 20, at 11-30.  Plaintiffs maintain that when they moved for summary judgment

before the Administrative Law Judge, they believed that it would be an interlocutory decision,

and that if they did not win, they would then be permitted to proceed with their case and present

their witnesses.  *Id.* at 11-12.  Plaintiffs also contend that the Administrative Law Judge failed to

assess the credibility of the Board's witnesses.  *Id.* at 15-21.  Finally, Plaintiffs argue that the

Board failed to meet its burden of demonstrating that W.W.'s IEP offered him "the opportunity for significant learning and meaningful educational benefit." *Id.* at 27.

Defendant maintains that it provided W.W. with a FAPE because his IEPs "were reasonably calculated to address his unique and individualized needs and confer a meaningful educational benefit." Def.'s Motion for Summary Judgment, Oct. 14, 2016, D.E. 21, at 6-19. Defendant argues that the Administrative Law Judge's decision was appropriately a final decision in response to the Plaintiffs' motion for summary judgment. Defendant contends that Plaintiffs' motion did not seek interlocutory relief from the Administrative Law Judge, but instead sought summary judgment, an action that warrants a final decision. Brief in Opposition to Pls.' Motion for Summary Judgment, Nov. 21, 2016, D.E. 29, at 4. Accordingly, Defendant argues, Plaintiffs waived the right to present witnesses when they moved for summary judgment.

The Defendant also contends that the decision was thorough, well-reasoned, and well supported by the record evidence, including both witness testimony and exhibits, many of which were joint exhibits agreed upon by both parties. *Id.* at 19-25. Finally Defendant argues that the Rules of Administrative Procedure do not require an ALJ to render written credibility determinations. *Id.* at 6-7.

### E.  Analysis

The parties' cross-motions for summary judgment require the Court first to consider whether the Administrative Law Judge erred in issuing a final decision on the cross-motions for summary judgment because she did not permit Plaintiffs to present their witnesses.

Statutory Right to Present Evidence

The IDEA states, in relevant part, that "a party to a [due process] hearing . . . shall be accorded . . . the right to present evidence and confront, cross-examine, and compel the attendance of witnesses." 20 U.S.C. § 1415(h)(2). The controlling federal regulation also guarantees parents the right to present both evidence and witnesses at a due process hearing conducted in accordance with the IDEA. 34 C.F.R. § 300.512(a)(2) (stating that a party to a due process hearing "has the right to . . . present evidence and confront, cross-examine, and compel the attendance of witnesses").[3] IDEA due process hearings that afford the parties the procedural safeguards contained within the IDEA and its implementing regulations, satisfy constitutional due process requirements. *See, e.g.*, *Does v. Mills*, Civ. No. 04-2919, 2005 WL 900620, *9 (S.D.N.Y. Apr. 18, 2005) (finding that regulations implementing the IDEA by the New York State Education Department did not deprive the parents of special needs children their right to due process in administrative hearings because they comported with traditional notions of constitutional due process); *see also Greenwich Bd. of Educ. v. G.M.*, Civ. No. 13-235, 2015 WL 5684023, *4 (D. Conn. Sept. 28, 2015) (agreeing with the hearing officer that granting the parents' request to have a witness appear telephonically would deny the Board its right to confront the parents' witness); *Genn v. New Haven Bd. of Educ.*, Civ. No. 12-704, 2015 WL 1064766, *7 (D. Conn. March 11, 2015) (finding that the hearing officer properly denied the parent's request to have a witness appear by telephone because telephonic testimony would deny the Board its right under the IDEA to confront witnesses).

---

[3] The relevant provision of the New Jersey Administrative Code is silent on the issue of presentation of witnesses during the due process hearing. *See generally* N.J.A.C. § 6A: 14-2.7.

In situations where parties to the due process hearing have been denied their procedural rights, the matter is often remanded so that an administrative law judge may conduct a full hearing in accordance with the IDEA. *See J.C. v. New York City Dept. of Educ.*, Civ. No. 15-3345, 2015 WL 8940044, *15, 21 (S.D.N.Y. Dec. 16, 2015) (remanding case for a new hearing where parent, who was a party to the due process hearing, was denied the right to present testimony from herself and two other witnesses); *B.G. v. Ocean City Bd. of Educ.*, Civ. No. 13-5166, 2014 WL 4798647, *7 (D.N.J. Sept. 26, 2014) (finding remand appropriate where it was not disclosed to the petitioner in advance of the hearing before the Administrative Law Judge that the Board would present a particular witness and therefore, petitioner was deprived the right to cross-examine that witness); *Davis v. Dist. Of Columbia Bd. of Educ.*, 522 F. Supp. 1102 (D.D.C. 1981) (remanding case for a full evidentiary hearing where the hearing officer rendered a decision on the proper placement for the learning disabled student without first hearing any of Plaintiffs' evidence concerning that placement).

In this case, there is no dispute that the Administrative Law Judge did not consider the testimony of Plaintiffs' witnesses in reaching her decision. Compl. ¶ 9; Answer ¶ 9. The Administrative Law Judge permitted Plaintiffs to present one witness, Scott Bezsylko, while the summary judgment motions were pending. However, the Administrative Law Judge made clear in her final decision that she did not consider his testimony because summary judgment briefing had been completed by the time he took the stand. Def.'s Motion for Summary Judgment, Exhibit A to Certification of Counsel, D.E. 21-3, at 2, n.1. The Administrative Law Judge stated:

> W.W.'s reply on the issue of FAPE was submitted on June 17, 2015. Thereafter, on July 15, 2015, while the cross-motions were still pending, W.W. presented the testimony of

one witness. Because the cross-motions were made and supported prior to that testimony, that testimony will not be recounted or considered here, for purposes of the cross-motions for summary decision.

*Id.* (internal citation omitted).

It does not appear that the Plaintiffs ever explicitly waived their right under § 1415(h)(2) to present witnesses. Neither party has submitted, for example, a colloquy wherein the parties and the Court discussed whether Plaintiffs intended to present witnesses notwithstanding the summary judgment motions, or the effect that granting Defendant's motion for summary judgment would have on Plaintiffs' right to present witnesses. And at oral argument, both parties acknowledged there was no such explicit waiver. Moreover, nothing in the Administrative Law Judge's decision reconciles the decision to grant Defendant's motion with the Plaintiffs' right to present witnesses under § 1415(h)(2).

It also appears that the Administrative Law Judge may not have considered Plaintiffs' exhibits, other than joint exhibits, while making her decision. The Administrative Law Judge's decision did not cite any of Plaintiffs' exhibits, and no witness presented testimony through which those exhibits would have been entered into evidence. For example, footnote 4 of the decision stated: "[Plaintiffs] cite[] a document that was not admitted in evidence, to establish W.W.'s progress at Winston, despite the fact that counsel for W.W. was repeatedly told that document was not in evidence, and accordingly, could not be considered." *Id.* at n.4.[4] Further, the only exhibits cited in the decision were the joint exhibits and the Board's exhibits.

---

[4] Presumably, this document would have come into evidence through Plaintiffs' witness, Bezsylko. *Id.* at n.1.

Defendant disputes Plaintiffs' representation that they did not intend or know that the Administrative Law Judge's ruling on their motion for summary judgment would be final. Defendant argues that Plaintiffs never specifically requested interlocutory relief, and that in any event, interlocutory relief is inconsistent with the finality inherent in a motion for summary judgment. Brief in Opposition to Pls.' Motion for Summary Judgment, Nov. 21, 2016, D.E. 29, at 4. Indeed, Plaintiffs' moving brief referred to the finality of summary judgment:

> The summary judgment procedure is designed to provide a "prompt" and "inexpensive" method of disposing of a case, which does not present any genuine issue of material fact requiring disposition at a hearing (emphasis added).

Letter Brief in Support of Summary Judgment Motion, May 27, 2015, at 9, Exhibit B to Certification of Frances Febres ("Febres Cert."), D.E. 21. Therefore, Defendant argues that Plaintiffs' counsel knew and understood the purpose of moving for, and the finality of, summary judgment. Brief in Opposition to Pls.' Motion for Summary Judgment, Nov. 21, 2016, D.E. 29, at 4. In sum, Defendant argues that Plaintiffs' summary judgment motion constitutes a waiver of their right to present evidence.

Plaintiffs respond that the Administrative Law Judge's final decision was inappropriate because they had not yet had the opportunity to present their witnesses. Plaintiffs posit that after the Administrative Law Judge denied their summary judgment motion, she should have allowed them the opportunity to present their witnesses and evidence. Pls.' Motion for Summary Judgment, Oct. 14, 2016, D.E. 20, at 11-12.

The Court finds Defendant's argument that Plaintiffs were aware that the Administrative Law Judge's decision would be final because they cited the correct summary judgment standard unpersuasive. As noted earlier, the Board bears "the burden of proving the appropriateness of

the IEP it has proposed." *Scott P.*, 62 F.3d at 533. Plaintiffs' motion for summary judgment asked the Administrative Law Judge to find, as a matter of law, that the Board had not met its burden of proving that it had provided W.W. a FAPE. Nothing in it, nor in those parts of the record submitted to this Court, contained a waiver by Plaintiffs of their right to present witnesses. Accordingly, the Administrative Law Judge's determination that Plaintiffs were not entitled to summary judgment did not extinguish Plaintiffs' right "to present evidence . . . and compel the attendance of witnesses." 20 U.S.C. § 1415(h)(2).

Moreover, it was not the denial of Plaintiffs' motion that concluded the due process hearing, but the granting of Defendant's motion. The Administrative Law Judge could have deferred Defendant's motion until after Plaintiffs had presented their witnesses to demonstrate that W.W.'s IEP was not reasonably calculated to enable him to receive a meaningful educational benefit. *See*, *e.g.*, *J.C.*, 2015 WL 8940044, *21. By issuing a final decision before hearing Plaintiffs' witnesses, the Administrative Law Judge impermissibly denied Plaintiffs' rights under the § 1415(h)(2) and 34 C.F.R. § 300.512(a)(2). The Administrative Law Judge did not cite, nor have the parties provided, any authority for the proposition that Plaintiffs waived their right to present evidence under the IDEA by virtue of the summary judgment motion. And the materials submitted to this Court contain no indication that Plaintiffs waived their right to call witnesses and present evidence.

To the contrary, Plaintiffs proffer that they would have called two witnesses, in addition to Scott Bezsylko, to contradict the evidence offered by Defendant. Plaintiffs were prepared to offer witness testimony to challenge the Defendant's witnesses' conclusions as to W.W.'s progress in appropriate placement, speech pathology, and W.W.'s progress. For example,

19

Plaintiffs' expert, Dr. Couvadelli, a clinical neuropsychologist, would have challenged

Erickson's conclusions on appropriate placement for W.W.[5]  Pls.' Motion for Summary

Judgment, Oct. 14, 2016, D.E. 20, at 8; Neuropsychological Evaluation by Barbara Couvadelli,

Ph.D., 2014 (Dr. Couvadelli Evaluation"), Joint Exh. 16 to Administrative Record; Opinion

Letter of Barbara Couvadelli, Ph.D., Nov. 12, 2014 ("Dr. Couvadelli Opinion"), Pls.' Exh. 49 to

Administrative Record.  Dr. Couvadelli would have testified that W.W. should have been placed

in a "small, language enriched environment with children with similar needs, frequent 1:1 time

with a trained individual who could assess W.W.' s needs on an ongoing basis to address issues

that were academic, emotional or social in nature."  Pls.' Motion for Summary Judgment, Oct.

14, 2016, D.E. 20, at 8; *see also* Dr. Couvadelli Evaluation, Joint Exh. 16; Dr. Couvadelli

Opinion, Pls.' Exh. 49.  She also would have testified "that the Defendant had offered a setting

that was 'not appropriate for addressing [W.W]'s academic, emotional and social needs in a

comprehensive manner and therefore a more appropriate specialized setting is recommended.'"

Pls.' Motion for Summary Judgment, Oct. 14, 2016, D.E. 20, at 8; *see also* Dr. Couvadelli

Evaluation, Joint Exh. 16; Dr. Couvadelli Opinion, Pls.' Exh. 49.  Dr. Couvadelli would also

have offered testimony to demonstrate that W.W. was not receiving a meaningful educational

benefit because his IEP did not address W.W.'s need for psychosocial and social skills training,

---

[5] At oral argument, Defendant argued that Dr. Couvadelli's report was put before the
Administrative Law Judge, and that Burrows addressed Dr. Couvadelli's opinions in his
testimony.  *See also* Def.'s Motion for Summary Judgment, Exhibit A to Certification of
Counsel, D.E. 21-3, at 15, 23.  However, Defendant cites no legal authority for the proposition
that the report itself, much less the Board's expert's commentary on that report, is an adequate
surrogate under § 1415(h)(2) and 34 C.F.R. § 300.512(a)(2) for the Plaintiff's expert's testimony.
It is also self-evident that there is a significant qualitative difference between Burrows's
characterizations of Dr. Couvadelli's report, versus Dr. Couvadelli's actual testimony.

but should have due to the nature of W.W.'s communication disabilities. Pls.' Motion for Summary Judgment, Oct. 14, 2016, D.E. 20, at 8; *see also* Dr. Couvadelli Evaluation, Joint Exh. 16; Dr. Couvadelli Opinion, Pls.' Exh. 49.

Plaintiffs also assert that they could have challenged Burrows's conclusions through the testimony of Dr. Couvadelli and Susan Levine, who holds a Masters Degree in speech-language pathology. Pls.' Motion for Summary Judgment, Oct. 14, 2016, D.E. 20, at 9. This testimony, Plaintiffs aver, would have established that W.W. failed to make "meaningful educational progress despite his average cognitive ability[,]" and that W.W. had average intelligence that rendered the IEP wholly inappropriate because it permitted regression. For example, Burrows testified for the Board that W.W. made articulation progress during the spring of 2013, but conceded on cross-examination that "pragmatic language should have been a priority over articulation." *Id.* This concession was apparently consistent with the testimony Susan Levine would have offered. *Id.* Levine would have testified that W.W.'s pragmatic language remained only at the fifth percentile, despite his average intelligence and continued speech and language therapy. *Id.* She also would have testified that W.W.'s pragmatic language scores should have been in the average range. *Id.* Also, while Burrows testified that W.W.'s articulation therapy should help with peer interactions, Dr. Couavdelli and possibly Levine would have testified that during their observations of W.W., he did not have successful peer interactions. *Id.* at 10. Burrows testified that a student with average intelligence may still fail to progress in language skills. *Id.* However, Dr. Couvadelli would have testified that W.W. was capable of progress. *Id.*; *see also* Dr. Couvadelli Evaluation, Joint Exh. 16; Dr. Couvadelli Opinion, Pls.' Exh. 49.

Scott Bezsylko testified for W.W. but, as noted earlier, the Administrative Law Judge did not consider his testimony. *See* Def.'s Motion for Summary Judgment, Exhibit A to Certification of Counsel, D.E. 21-3, at 2, n.1. He testified to the progress W.W. was making at Winston to demonstrate the difference between that progress and W.W.'s lack of progress in the District. Pls.' Motion for Summary Judgment, Oct. 14, 2016, D.E. 20, at 14. In fact, Bezsylko testified that W.W. had made more than a year's worth of progress at Winston in one year. *Id.* Plaintiffs assert that Dr. Couvadelli similarly would have testified that "W.W. possessed the cognitive ability to make a year's growth of grade equivalent per academic year." *Id.* at 27; *see also* Dr. Couvadelli Evaluation, Joint Exh. 16; Dr. Couvadelli Opinion, Pls.' Exh. 49.

It may be that an administrative law judge hearing both sides' witnesses would credit the Defendant's evidence over W.W.'s evidence. And that judge may have concluded that the 2014-2015 IEP offered by the Board offered W.W. a meaningful educational benefit and satisfied the requirements for a FAPE. To be clear, the Court takes no position on those issues. But the Court is satisfied that Plaintiffs were prepared to present their own evidence to challenge the Board's witnesses' testimony, as is clearly their right under § 1415(h)(2). And the Court is satisfied from its review of the Administrative Law Judge's decision that the decision rested heavily on the evidence offered by Defendant. By granting summary judgment for Defendant, the Administrative Law Judge denied Plaintiffs a fair opportunity to present evidence, in violation of § 1415(h)(2) and 34 C.F.R. § 300.512(a)(2). Plaintiffs should have been afforded the opportunity to present their witnesses and evidence to refute Defendant's evidence, and to attempt to demonstrate that the 2014-2015 IEP did not confer a meaningful educational benefit on W.W.

1. <u>Remand Is Appropriate</u>

Having determined that Plaintiffs should have been permitted to present evidence and have their witnesses testify on their behalf at the due process hearing, the Court must now determine whether to remand this action so that a new due process hearing can take place, or whether this Court is the appropriate venue for taking that testimony and determining whether W.W.'s 2014-2015 IEP provided him with a FAPE.  Plaintiffs argue that this Court should conduct the hearing rather than remand it, because the Administrative Law Judge who conducted the hearing has since retired.  However, the Court finds Plaintiffs' request for this Court to take testimony unpersuasive.  As noted above, federal courts regularly remand upon finding a denial of procedural rights.  Additionally, cases before the Office of Administrative Law are often heard by multiple administrative law judges in instances of retirement or otherwise.  *See*, *e.g.*, *M.K. v. Div. Of Med. Assistance & Health Servs.*, Docket No. A-0790-14T3, 2016 WL 2759273, *2 (N.J. App. Div. May 13, 2016) (an ALJ conducted a two-day hearing but retired before issuing a recommendation, so a different ALJ reviewed the record and issued a recommendation); *Carbacho v. Board of Trustees, Police and Firemen's Retirement System*, Civ. No. A-1810-11T2, 2013 WL 827729, *2, 7 (N.J. App. Div. March 7, 2013) (an ALJ presided over a two-day hearing and issued a decision but upon remand the matter was assigned to a different ALJ); *Ruiz v. Commissioner of Social Security*, Civ. No. 08-6388, 2010 WL 1253886, *1 (D.N.J. Mar. 25, 2010) (hearing held by an ALJ who later retired, so matter was transferred to another ALJ to issue decision);  *Hartnett v. Apfel*, 21 F.Supp.2d 217, 222 (E.D.N.Y. 1998) (case specifically

reassigned to a different ALJ on remand where prior ALJ had appeared impatient and mischaracterized evidence).

The Court will deny Plaintiffs' request to hear their evidence in the first instance before this Court. The Court "defer[s] to the expertise of administrative agencies in the areas upon which those agencies are called to administer." *Fuhrmann on Behalf of Fuhrmann v. E. Hanover Bd. of Educ.*, 993 F.2d 1031, 1043 (3d Cir. 1993); *see also R.S. v. Montgomery Twp. Bd. of Educ.*, Civ. No. 10-5265, 2012 WL 2119148, at *7 (D.N.J. June 11, 2012) (on remanding the case to the Administrative Law Judge for further consideration of whether plaintiff received a FAPE, the Court recognized that "courts lack the 'specialized knowledge and experience' required to determine 'persistent and difficult questions of educational policy.'") (internal citation omitted). Remand is particularly appropriate in this instance, because Plaintiffs were not allowed to present their witnesses in the due process hearing.

Because the Court has determined that Plaintiffs were not provided the due process protections of the IDEA at the hearing before the Administrative Law Judge, and that remand is appropriate, it does not reach the issue of whether the IEP for W.W. for 2014-2015 provided a FAPE. Accordingly, the Court will remand this matter to the New Jersey Office of Special Education Programs in the first instance so that it may refer the matter to an Administrative Law Judge for a due process hearing that comports with the requirements of the IDEA. *See* N.J.A.C. § 6A:14-2.7(g) ("when the Office of Special Education Programs receives a request for a due process hearing, the matter shall be processed and, as appropriate, mediation and a due process hearing in accordance with these rules will be made available to the parties.").

IV.     **CONCLUSION**

For the reasons set forth above, Plaintiffs' motion for summary judgment is granted and Defendant's motion for summary judgment is denied.  This matter will be remanded to the New Jersey Office of Special Education Programs for a new due process hearing.  An appropriate Order accompanies this Opinion.

s/Michael A. Hammer
**UNITED STATES MAGISTRATE JUDGE**

Dated:  May 24, 2017